CHARLES RODGERS, RESPONDENT, v. GREAT ATLANTIC AND PACIFIC TEA COMPANY, A CORPORATION, APPELLANT.

Submitted March 17, 1920—Decided June 15, 1920.

To render the master liable for the negligent act of the servant, the act must be done for the purpose of executing the master's orders and doing his work while actually engaged in serving the master. It is not enough to say, the injuries complained of would not have been committed, without the facilities afforded by the servant's relation to his master. In this case it is *held*, the injuries inflicted upon the plaintiff were done by a servant, not to advance the master's interest or in the line of the servant's employment, but while acting wholly, without the scope of his duties and employment, in consequence of which the defendant is not responsible. For the facts of the case see the body of the opinion.

On appeal from the Hudson County Court of Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the appellant, *Edward T. Magoffin, Martin Conboy* and *Edwin N. Moore* (of the New York bar) on the brief.

For the respondent, *Mark A. Sullivan.*

The opinion of the court was delivered by

BLACK, J. · The controlling and undisputed facts in this case are somewhat unusual. They may be thus summarized: The plaintiff, Charles Rodgers, and Henry Brunges were employed by the defendant company. Rodgers as a chauffeur and Brunges as his helper or assistant in delivering groceries from the defendant's warehouse, in Jersey City, to the defendant's Union Hill store, New Jersey. Rodgers was shot by Brunges with a revolver. Both men were in a room back

of the Union Hill store. They, had delivered goods at the store, where the accident occurred. The revolver was lying on a small shelf in the rear room of the store. It was the private property of a Mr. Carlslund, who was the manager of the store. The revolver was placed there by Mr. Carlslund and had been lying on the shelf untouched for about seven months next preceding the accident.

Rodgers and Brunges had delivered all the groceries to be left there at the Union Hill store. After finishing work Rodgers went into the rear room to wash. Brunges testified: "The accident occurred on August 30th, 1918, in the afternoon about half-past five. Rodgers asked me if I was going to wash up; I said yes; he went in first, *i. e.*, in the rear room; I followed him; as I followed him, I just reached about the door, something was shining, so, I walked over to the corner and this revolver stuck out, so, I thought best to pick it up, to shove it in, so it would not fall, and, so, as I picked it up, it exploded; the shelf, on which the revolver was lying, was on the left-hand side of the room—the shelf from the floor was about up to my shoulder."

Rodgers testified: "As I went to the rear of the store to wash myself and on the return out to get a towel before I knew I had been shot; I went into the back room simply to wash up." There was nothing about the leaving of the goods or the delivery of the goods that necessitated going in the back room.

The trial resulted in a verdict for the plaintiff. From the judgment entered on the verdict of the jury the defendant appeals.

The defendant urges that it was error for the trial court not to nonsuit the plaintiff or direct a verdict in favor of the defendant. The theory on which it is sought to predicate liability of the defendant is not quite clear. The only theory that is suggested is either negligence of the defendant in allowing the revolver to be placed on the shelf in the washroom or negligence on the part of Brunges, in the handling the revolver, while performing his master's service, as part of

his employment. But both of these theories seem to us to be refuted by the facts. Assuming that the defendant is to be chargeable with the result of Mr. Carlslund's act in placing the revolver where he did on a shelf on the left-hand side of the rear room, can it be inferred that it was not a proper place in which to keep a revolver; even, though, it belonged to the defendant and was kept in defence of the defendant's property? The revolver as it lay on the shelf was harmless. If, therefore, it was a proper place in which to keep the revolver, that fact, standing alone, could not be the basis on which to rest a judgment against the defendant for negligence.

On the point of Brunges' negligence in handling or meddling with the revolver, the most that can be inferred from the testimony is, that Rodgers and Brunges were impliedly permitted to enter the rear room, where the revolver was kept, solely for the purpose of washing themselves. There is not a scintilla of evidence, or even a suggestion in the record, that the defendant permitted Brunges to handle the revolver or in handling and meddling with the revolver, he was doing anything, either to advance his master's interest or in the line of his employment. He was acting wholly without the scope of his duties and employment. There is no causal connection between the employment of Brunges and the injury to Rodgers. Rodgers' injury was caused by the unrelated act of a third person, for which the defendant is not liable to respond in damages. To render the master liable for the negligent act of the servant, the act must be done for the purpose of executing the master's orders and doing his work while actually engaged in serving the master. It is not enough to say that the injuries complained of would not have been committed without the facilities afforded by the servant's relation to his master. *Doran* v. *Thomsen,* 76 *N. J. L.* 754, 759. It was error for the trial court to refuse the defendant's motions. The judgment of the trial court is therefore reversed, to the end that a *venire de novo* may issue.